UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PHOENIX HERPETOLOGICAL SOCIETY, INC., | ) ) ) ) |  |
| Plaintiff, | ) ) ) |  |
| v. | ) ) ) | Case No. 19-cv-00788 (APM) |
| UNITED STATES FISH AND WILDLIFE SERVICE, et al., | ) ) ) ) |  |
| Defendants. | ) ) |  |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Phoenix Herpetological Society, Inc. brought this action challenging Defendants' failure to act on its request to amend its Captive Bred Wildlife permit. Before the court is Defendants' Motion to Dismiss. For the reasons that follow, the Motion is granted without prejudice to Plaintiff filing an amended complaint.

I.

A.

Section 9 of the Endangered Species Act of 1973 ("ESA") prohibits the taking of endangered species. 16 U.S.C. § 1538(a)(1)(B), (C). "Taking" is defined as harassing, harming, pursuing, hunting, shooting, wounding, trapping, capturing, or collecting any such species. *Id.* § 1532(19). Section 9 also forbids a whole array of other acts with respect to endangered species, including importing, exporting, possessing, selling, delivering, carrying, transporting, or shipping such species. *Id.* § 1538(a)(1). Notwithstanding these restrictions, under Section 10 of the ESA,

the Secretary[1] may issue permits that allow acts otherwise prohibited by Section 9 "for scientific purposes or to enhance the propagation or survival of the affected species." *Id.* § 1539(a)(1)(A).

In 1979, pursuant to its Section 10 authority, the United States Fish and Wildlife Service ("FWS") established the Captive Bred Wildlife ("CBW") permitting program. That program allows qualified individuals to "take; export or re-import; deliver, receive, carry, transport or ship in interstate or foreign commerce, in the course of a commercial activity; or sell or offer for sale in interstate or foreign commerce any endangered wildlife that is bred in captivity in the United States" if "[t]he purpose of such activity is to enhance the propagation or survival of the affected species." 50 C.F.R. § 17.21(g)(1); 44 Fed. Reg. 54,001, 54,007 (Sept. 17, 1979); *see also Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros.*, 502 F. Supp. 2d 103, 111 (D.D.C. 2007). The Director of FWS must also find that a CBW registration "will not operate to the disadvantage of the species." 50 C.F.R. § 17.21(g)(3).

B.

Approximately ten years ago, FWS granted Plaintiff[2] a CBW Registration that authorized Section 10 exemptions for certain species. First Am. Compl., ECF No. 10 [hereinafter Am. Compl.], ¶ 23. In the ensuing years, the agency approved various amendments to Plaintiff's CBW Registration that added even more Section 10 species exemptions. *Id.* ¶ 24. Some of Plaintiff's applications to amend initially were denied by FWS's Branch of Permits, and in several instances those denials were reversed during FWS's reconsideration and appeal processes. *Id.* ¶ 25 (citing 50 C.F.R. § 17.3 *et seq.*). Plaintiff also says that it "previously filed actions against the United States Department of the Interior and [FWS] to enforce [its] citizen suit rights that are stated under

---

[1] Depending on the species, either the Secretary of Commerce or the Secretary of the Interior has such authority. 16 U.S.C. § 1533(a); 50 C.F.R. § 402.01(b).
[2] This lawsuit was originally filed by two individuals, Christian Ryder and Russell Johnson, but on May 29, 2019, Phoenix Herpetological Society was substituted as Plaintiff. *See* May 29, 2019 Minute Order.

Title 50 and within the Endangered Species Act." *Id.* ¶ 26.  Specifically, Plaintiff cites two prior litigations:  a 2017 case that is pending before this court, and a 2015 case that resulted in settlement. *Id.* (citing *Ryder v. U.S. Fish and Wildlife*, 1:17-cv-02584 (APM) (D.D.C.); *Ryder v. U.S. Dep't of the Interior*, 1:15-cv-01576 (CRC) (D.D.C.)).

On February 10, 2018, Plaintiff filed the application at issue in this suit, asking to amend its CBW Registration to add a Section 10 exemption for *Varanus komodoensis*, commonly known as the Komodo dragon.  *Id.* ¶ 27; *see also* Compl., ECF No. 1 [hereinafter Compl.], Pls.' Appl. Form, Ex. 1, ECF No. 1-1.  The application allegedly "provided thorough, accurate, and complete data and information that would have allowed the federal defendants to make the sensible decision to approve the permit amendment."  Am. Compl. ¶ 27.  According to Plaintiff, information provided on FWS's application forms and website states that "'*up to 90 days*' is required to properly review, administer and produce the CBW permit," which time would include a 30-day notice-and-comment period  *Id.* ¶ 37; *see also id.* ¶ 38 (citing *Captive-bred Wildlife Registration under the U.S. Endangered Species Act*, U.S. FISH AND WILDLIFE SERVICE, https://www.fws.gov/international/pdf/factsheet-captive-bred-wildlife-and-endangered-species-act.pdf (last visited Apr. 24, 2020) (stating that FWS's public notification notes that "[a]pplicants should allow approximately 90-days to process and review an application" and that the "review process includes a 30-day comment period to receive public comments")).  Yet, as of March 21, 2019, the date that this suit was filed, Plaintiff contends that its application had not been processed or responded to in any way.  *Id.* ¶ 32.

Plaintiff states that "an application filed to a federal agency that has been ignored," or that the agency has failed to take action on after 180 days, is "deemed denied."  *Id.* ¶ 33.  Therefore,

3

Plaintiff claims that "federal defendants have unlawfully, capriciously, and arbitrarily denied the . . . application" to amend Plaintiff's CBW Registration by failing to act on it. *Id.* ¶ 39.

Plaintiff's Amended Complaint also discusses an Import Permit issued to Plaintiff under the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES") on September 18, 2017. *Id.* ¶ 39(A). The permit authorized the Aalborg Zoo of Aalborg, Denmark to "lawfully place in international transit 10 live Melanosuchus Niger Caiman animals." *Id.* ¶ 39(C)–(E). Plaintiff alleges that when FWS's Branch of Permits issued the import permit, it "unlawfully encumbered the plaintiffs' import permit" by making "third-party money donations . . . a precondition of the import permit." *Id.* ¶ 39(J). More specifically, Plaintiff contends that FWS "mandated that in order for plaintiff[ ] to remain compliant with the Import Permit," Plaintiff would be required to make some unspecified "third-party money donations" after the Niger Caimans were shipped and received. *Id.*

C.

On March 21, 2019, Plaintiff filed the present action against FWS, the United States Department of the Interior, and various agency officials. *See* Compl. Two months later, Plaintiff filed an amended complaint. *See* Am. Compl. Plaintiff asserts three counts for violations of the Administrative Procedure Act ("APA") and the ESA, as well as one count for violating CITES. *Id.* ¶¶ 42–48, at pp. 12–14. As pertinent here, Plaintiff asks for a declaration that Defendants violated the APA and ESA in failing to act on, and thus constructively denying, their application, as well as a "Declaratory Judgment commanding FWS to issue [Plaintiff's] CBW registration amendment." *Id.* at 14.

In June 2019, FWS finally acted on Plaintiff's application. It published a notice in the Federal Register inviting public comment on Plaintiff's application to amend their CBW

4

registration. Fed. Defs.' Mot. to Dismiss Pl.'s Compl. & Mem. in Supp., ECF No. 20 [hereinafter Defs.' Mot.], at 4 (citing 84 Fed. Reg. 26,145 (June 5, 2019)). The period for comments closed in July 2019, and FWS issued a final determination on Plaintiff's application on July 23, 2019. *Id.* On July 24, 2019, FWS mailed Plaintiff its approved amended registration. *Id.*; *see also id.*, Ex. 1, ECF No. 20-1. In light of this positive agency action, Defendants now move to dismiss as moot Counts I–III of Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).[3] *See generally* Defs.' Mot.

II.

"Where a motion to dismiss under Rule 12(b)(1) makes a facial attack on the complaint, the reviewing court 'must accept as true all material allegations on the complaint, and must construe the complaint in favor of the complaining party.'" *Martha's Vineyard/Dukes Cty. Fisherman's Ass'n v. Locke*, 811 F. Supp. 2d 308, 313 (D.D.C. 2011) (quoting *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009)); *see also Jerdine v. FDIC*, 730 F. Supp. 2d 218, 222–23 (D.D.C. 2010) ("In ruling on a motion under Rule 12(b)(1), the Court 'must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975))). The burden is on the plaintiff to demonstrate that the court has subject-matter jurisdiction. *Jerdine*, 730 F. Supp. 2d at 222 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) ("Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction."). A court "may in

---

[3] Defendants move to dismiss Counts I–III of Plaintiff's original complaint, *see* Def.'s Mot. at i (Defendants . . . hereby move to dismiss Plaintiff's Complaint, ECF No. 1), but because Counts I–III remain the same in the Amended Complaint, *compare* Compl. ¶¶ 42–46, *with* Am. Compl. ¶¶ 42–46, at pp. 12–13, the court will treat the motion as moving to dismiss the first three counts of the Amended Complaint. Defendants do not move with respect to Count IV, which was added in the Amended Complaint and pertains to the Melanosuchus Niger Caiman animal import permit. *Compare* Compl., *with* Am. Compl.

5

appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under [Rule 12(b)(1)] on the complaint standing alone," however, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." FED. R. CIV. P. 12(h)(3) (emphasis added); *D.C. Transit Sys., Inc. v. United States*, 717 F.2d 1438, 1440 n.1 (D.C. Cir. 1983); *Pond Constructors, Inc. v. U.S. Gov't Accountability Office*, Civil Action No. 17-0881 (DLF), 2018 WL 3528309, at *1 (D.D.C. May 30, 2018) (". . . Rule 12(h)(3) requires a court to dismiss an action if it 'determines at any time that it lacks subject-matter jurisdiction.'" (quoting FED R. CIV. P. 12(h)(3)).

III.

A.

"The mootness doctrine, deriving from Article III, limits federal courts to deciding 'actual, ongoing controversies.'" *Clarke v. United States*, 915 F.2d 699, 700–01 (D.C. Cir. 1990) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). Accordingly, "[e]ven where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Id.* at 701 (quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)); *see also NRDC v. U.S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 813–14 (D.C. Cir. 1982) ("[N]o justiciable controversy is

presented . . . when the question sought to be adjudicated has been mooted by subsequent developments." (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)).  "A case becomes moot . . . when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

The Supreme Court has recognized an exception to the mootness doctrine where the issue in question is "capable of repetition, yet evading review."  *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).  The doctrine applies when a plaintiff is "attack[ing] an isolated agency action," as opposed to an ongoing policy.  *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009).[4]  The exception's reach, however, is limited.  For it to apply, "(1) the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [must be] a reasonable expectation that the same complaining party would be subjected to the same action again."  *Weinstein*, 423 U.S. at 149.  "Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).  And "jurisdiction cannot be predicated upon a speculative or irrational fear as to future agency conduct."  *Ctr. For Science in the Pub. Interest v. Regan*, 727 F.2d 1161, 1166 n.6 (D.C. Cir. 1984).

---

[4] Nowhere in the complaint does Plaintiff suggest that it is challenging an FWS policy, so the court need not address the ongoing policy exception to the mootness doctrine.  *See, e.g.*, *Del Monte*, 570 F.3d at 321.  Rather, Plaintiff challenges discrete agency inaction with regard to a particular CBW registration amendment application, *see* Am. Compl. ¶ 39 ("The federal defendants have unlawfully, capriciously, and arbitrarily denied the plaintiffs' application."); *see also id.* ¶ 43 ("Federal Defendants acted arbitrarily and capriciously in denying the amended permit application."), and points to a pattern of other similar discrete actions taken by the agency, which together show "cyclical mooting."  Nowhere does Plaintiff assert that FWS has an official policy to delay CBW registration applications.

B.

Defendants contend that "Plaintiff's claims are moot because [Plaintiff] seeks relief with respect to a CBW registration that has already been issued and the Court can no longer provide Plaintiff any effective relief." Def.'s Mot. at 5. Plaintiff does not dispute that the court cannot grant at least one form of relief sought—directing FWS to amend its CBW registration. The agency already has taken that action. Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot., ECF No. 21 [hereinafter Pl.'s Opp'n], at 2. Plaintiff, however, insists that the case is not moot because the court still can determine that the agency's failure to timely act was unlawful, that is, it can grant declaratory relief. *Id.* at 5. Where, as here, a plaintiff challenges an isolated agency action, "the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful, unless the specific claim fits the exception for cases that are 'capable of repetition, yet evading review.'" *City of Houston v. Dep't of Hous. and Urban Devel.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994). Plaintiff maintains that the "capable of repetition, yet evading review" exception applies, because FWS's failure to timely act on Plaintiff's application "is not an isolated and one-time occurrence by defendant." Pl.'s Opp'n at 2; *see also id.* at 7–8. Based on the present record, however, Plaintiff fails to establish that its claim is "capable of repetition."[5]

An action "is 'capable of repetition' if there is 'a reasonable expectation that the same party [will] be subjected to the same action again." *Ralls Corp. v. Comm. on Foreign Invasion in U.S.*, 758 F.3d 296, 323–24 (D.C. Cir. 2014). "The same action generally refers to particular agency policies, regulations, guidelines, or recurrent identical agency actions." *Id.* at 324 (cleaned up). It is not necessary that the same "precise historical facts that spawned plaintiff's claims" recur; rather, "the legal wrong complained of by the plaintiff" must be "reasonably likely to occur." *Id.*

---

[5] The parties do not discuss the "evading review" prong. Because the court will allow Plaintiff to replead, the court need not decide whether the dispute evades review. *See Weinstein*, 423 U.S. at 149.

(quoting *Del Monte*, 570 F.3d at 324).  This prong should not "be applied with excessive stringency"—"a controversy need only be *capable* of repetition, not more probable than not." *Id.* (internal quotation marks omitted) (quoting *Honig v. Doe*, 484 U.S. 305 319 n.6 (1988)).  "[A] controversy is *capable* of repetition even if its recurrence is far from certain." *Id.* (citing *Doe v. Sullivan*, 938 F.2d 1370 (D.C. Cir. 1991)).

Here, Plaintiff contends that it "[has] on at least eight . . . separate occasions been required to either commence legal action against defendant and/or threaten the commencement of legal action due to the dilatory conduct of defendant to purposely delay the processing of each of the aforementioned eight applications." Pl.'s Opp'n at 2.  Plaintiff calls this practice "cyclical mooting." *Id.* at 1–2.  Had Plaintiff in fact substantiated these eight claimed occasions, Plaintiff arguably might have satisfied the "capable of repetition" criteria. *See Reid v. Hurwitz*, 920 F.3d 828, 833 (D.C. Cir. 2019) (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 n.16 (1999)) (finding that a challenge brought by an incarcerated inmate to a prison's segregated housing policy was not moot by virtue of his transfer from segregated housing based on allegations that he had been placed in segregated housing "in almost every facility that confined him for longer than twenty-eight days, including four instances of segregation after he filed his complaint"); *Clarke v. United States*, 915 F.2d 699, 704–05 ("In estimating the likelihood of an event's occurring in the future, a natural starting point is how often it has occurred in the past.  Here, the [amendment] represents the *sole* occasion on which Congress has used conditioned funding to induce the D.C. Council (or any other government, so far as appears) to enact particular language into law.  The amendment thus was . . . a purple cow.  [The court has] no reason at all to expect to see one ever again . . ."); *see also United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Assc. of the U.S. & Canada, AFL-CIO*, 721 F.3d 678, 688

9

(D.C. Cir. 2013) (citing *Clarke* and noting that given that "the parties [had] already arbitrated three jurisdictional disputes arising under the [project labor agreement] . . . it [was] not unreasonable to expect another dispute to arise . . . before the Agreement expires").

But Plaintiff offers limited evidentiary support for its claim of "cyclical mooting." Plaintiff submits the declaration of Christian Ryder, its legal affairs officer, but Ryder references only two prior instances in the past five years in which the agency late-approved applications after the filing of a lawsuit—once in 2017 and another in 2015. See Pl.'s Opp'n, Decl. of Christian Ryder, ECF No. 21-1 [hereinafter Ryder Decl.], ¶¶ 2–4. As for the six purported other instances, Plaintiff directs the court to its opposition brief in the related case, *Phoenix Herpetological Society v. U.S. Fish and Wildlife Serv.*, 1:17-cv-02584 (APM) [hereinafter *Phoenix I*]. See Pl.'s Opp'n at 2. That opposition brief, however, provides only a summary description of supposed prior litigation, offering no citations to either dockets or decisions that would enable the court to confirm Plaintiff's representations. See *Phoenix I*, Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. & in Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J., ECF No. 40, at 21 & n.31. The court therefore is left with one sworn declaration that describes two prior instances occurring within the last five years in which the agency delayed action on an application until after suit was filed. That is not sufficient to meet the "capable of repetition" criteria, even at the motion to dismiss stage. See *Pub. Utils. Comm. of the State of Cal. v. FERC*, 236 F.3d 708, 714–15 (D.C. Cir. 2001) (stating that there must be more than "merely a physical or theoretical possibility of recurrence, but a reasonable expectation if not a demonstrated probability that [the plaintiff] will be subject to the same action") (quoting *Murphy v. Hunt*, 445 U.S. 478, 482 (1982)).

Plaintiff likens its case to *Del Monte Fresh Produce Company v. United States*, Pl.'s Opp'n at 6–7 (citing 570 F.3d 316 (D.C. Cir. 2009)), but that case is distinguishable. In *Del Monte*, the

plaintiff challenged a delay in the Office of Foreign Assets Control's ("OFAC") issuance of a one-year export license that would allow Del Monte to export agricultural commodities to Iran. 570 F.3d at 318–20. OFAC had established "an expedited licensing process, with deadlines for agency action." *Id.* at 319. Under the expedited process, "OFAC would refer the application to other agencies, and, provided the license application met the requirements set forth in the regulations, OFAC would issue the license so long as no objection was received within nine business days." *Id.* at 319–20. Del Monte submitted a license application that it alleged contained all of the required information. OFAC referred the application to the State Department, and the State Department responded without raising an objection to the issuance of the license. *Id.* at 320. Nonetheless, OFAC did not issue the license, and, more than 100 days after OFAC referred the application to the State Department and 75 days after the State Department's response, Del Monte filed suit claiming that OFAC "unlawfully withheld and unreasonably delayed [action] under the [APA]." *Id.* The district court concluded that the case was moot, and the capable of repetition yet evading exception did not apply "because Del Monte's amended complaint only sought relief for the handling of the August 2007 license application, and OFAC had already issued that license, it is impossible for delay of that application to reoccur." *Id.* at 321. The D.C. Circuit reversed, holding that the exception did apply. *Id.* at 326.

Although there are factual parallels between this case and *Del Monte*, the plaintiff in *Del Monte* succeeded where this Plaintiff fails—it supplied sufficient evidence to establish the "capable of repetition" prong. Del Monte offered three categories of evidence. First, Del Monte proffered an unchallenged declaration stating that Del Monte "will definitely apply for OFAC licenses in the future, on a continuing basis." *Id.* at 324. Second, an international trade specialist "described how OFAC had failed to act on Del Monte's license applications within the nine-day

deadline on five separate occasions in the past." *Id.* And lastly, Del Monte pointed to an OFAC press announcement that its "processing of one-year license requests may take longer than the time periods suggested at the inception of the . . . program." *Id.* Together, this evidence showed "a reasonable likelihood that in the future OFAC will fail to act on [Del Monte's] applications within the purportedly mandatory period and that at least some of those delays will be as unreasonable as the . . . license application delay [at issue in the suit]." *Id.* at 325. Here, even if the court were to assume that Plaintiff is likely to submit another application to amend its CBW registration, Plaintiffs have not sufficiently demonstrated that past delays are likely to recur. Unlike the delays confirmed by declaration in *Del Monte*, *see* 570 F.3d at 324, the Ryder Declaration addresses only two of the eight claimed prior instances of "cyclical mooting" done by the agency, *see* Ryder Decl., and Plaintiff supplies no evidence as to the other six. The actual evidence submitted by Plaintiff therefore is not sufficient to avoid the mootness doctrine.

That is not to say that Plaintiff cannot satisfy its burden at the pleading stage. Well-pleaded allegations or more evidence to substantiate its claim of "cyclical mooting" would help. Accordingly, although the court grants Defendants' motion, it does so without prejudice to Plaintiff amending its complaint.

IV.

For the foregoing reasons, the court grants Defendants' Motion to Dismiss, ECF No. 20, but affords leave to Plaintiff to amend its complaint. Such amendment must be filed by no later than May 12, 2020.

Dated: April 28, 2020

Amit P. Mehta
United States District Judge