UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHOENIX HERPETOLOGICAL SOCIETY, INC., <br><br> *Plaintiff,* <br><br> vs. <br><br> U.S. FISH AND WILDLIFE SERVICE, CRAIG HOOVER, ROSEMARIE GNAM, MARY COGLIANO, and U.S. DEPARTMENT OF THE INTERIOR, <br><br> *Defendants.* | Civil Action No. 1:19-cv-00788 (APM) <br><br> **THIRD AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** |

**THIRD AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Phoenix Herpetological Society, Inc., (hereinafter referred to as "PHS") hereby alleges that this Third Amended Complaint is being filed in compliance with Fed. R. Civ. P. 15 and the Court's Memorandum Opinion and Order [ECF No. 25] dated April 28, 2020. PHS further alleges and asserts its claim for declaratory judgment regarding defendant engaging in "cyclical mooting" which is an exception to the mootness doctrine as follows:

1. Plaintiff challenges the U.S. Fish and Wildlife Service's ("FWS") processing of permit applications that involve unnecessary inaction/inactivity regarding defendant's permit application processes in that such conduct by the Agency constitutes an isolated agency action.

2. Plaintiff challenges the U.S. Fish and Wildlife Service's ("FWS") processing of permit applications that involve unnecessary inaction/inactivity regarding

defendant's permit application processes in that such conduct by the Agency constitutes an agency ongoing policy.

      3.    This Declaratory Judgment under 28 U.S.C. § 2201 only concerns lawfully submitted permit applications that were filed with the defendants in instances where the process of such applications were unduly delayed as occasions by lengthy periods of agency inactivity in violation without the agency either issuing or denying said permit within the timeframes allotted by 50 C.F.R. § 17.3.

      4.    At all times, plaintiff was in complete and material compliance with the Endangered Species Act 16 U.S.C. § 1531(a)(c)(d) and 50 C.F.R. 17.3 (and all applicable subsections).

## JURISDICTION AND VENUE

      5.    This Court has federal question jurisdiction over the case pursuant to 28 U.S.C. § 1331.

      6.    This Court may grant the relief requested under 28 U.S.C. §§ 2201-2202 (declaratory judgment) and 5 U.S.C. §§ 701-706 (Administrative Procedure Act: judicial review of final agency action and inaction), and 16 U.S.C. § 1540(g) (ESA's 'citizen suit provision').

      7.    Venue is proper in this judicial district (District of Columbia) pursuant to 28 U.S.C. § 1391(e).

      8.    This Court has subject matter jurisdiction of the Endangered Species Act 16 U.S.C. § 1531, (a)(c)(d).

      9.    The judicial review provisions of APA and ESA waive the Federal government's sovereign immunity preclusion, 5 U.S.C. § 702, 16 U.S.C. § 1540(g).

10. This Court has personal jurisdiction over the federal agency defendants and it also has subject matter jurisdiction over plaintiff's claim in that plaintiff has pled sufficient facts that qualify this action and claims as an exception to the mootness in that such complained of conduct by plaintiff as to the Federal Defendants.

## PARTIES

11. Plaintiff, Phoenix Herpetological Society, Inc., is an Arizona corporation, that is a Permittee who holds a Captive-Bred Wildlife Registration Permit issued to it by the Department of the Interior U.S. Fish and Wildlife Service. Plaintiff is a licensed zoo dedicated to propagation and conservation of endangered and rare, and in some cases; nearly extinct reptiles. Plaintiff is an aggrieved and injured party.

12. United States Department of Interior is a department of the United States government.

13. The Fish and Wildlife Service is one of nine independent agencies that operate under the United States Department of Interior.

14. Rosemarie Gnam is the Chief of the Division of Science Authority ('DSA') within the U.S. Fish & Wildlife Service.

15. Craig Hoover is the Chief of Division of Management Authority ('DMA') within the United States Fish and Wildlife Service.

16. Mary Cogliano is the Chief of the Branch of Permits, a division of DMA within the United States Fish & Wildlife Service.

**Statutory Framework Giving Rise to Plaintiffs' Claim for Relief**

17. Section 9 of the ESA makes is unlawful to '*deliver, receive, carry, transport, or ship in interstate commerce ... in the course of a commercial activity* "any endangered species 16 U.S.C. § 1538 (a).

18. These prohibitions apply to endangered animals bred in captivity, as well as to those in the wild, unless a lawful section 10 permit has been issued by the FWS.

19. Section 10(a)(1)(A) of the ESA authorizes the FWS to issue a "permit"[1] for any act that is otherwise prohibited by section 9, but only if such act is "for scientific purposes or to enhance the propagation or survival of the affected species" 16 U.S.C. § 1539(a)(1)(A).

20. The FWS may grant exceptions under section 10(a) "[o]nly if (it) finds and publishes … in the Federal Register that (1) such exceptions were applied for in good faith, (2) if granted and exercised will not operate to the disadvantage of such endangered species and (3) will be consistent with the purposes and policy [of the] Act". 16 U.S.C. § 1539(d).

21. The purposes of the ESA "are to provide a means whereby the ecosystems upon which endangered (or threatened) species depend may be conserved, to provide a program for the conservation of such endangered and threatened species, and to take such steps as may be appropriate to achieve the purposes of the treaties and conventions set forth in subsection (a) of this section "16 U.S.C. § 1531(b).

---

[1] FWS has organizationally referred to licenses and permits in the ambit of 'Permits', although as here with the instant case the Plaintiff was issued a FWS Import Export Permit, some document authority issued by FWS says 'permit' and others say 'license'. FWS refers to these as *permits.*

4

22. No provision of the ESA authorizes the Federal Defendants to engage in activities that discourage or hinder conservation or result in harm to the conservation of species. Defendants have taken steps to obfuscate Plaintiff's procedural entitlement to permits and licenses for which it is qualified. ESA does not tolerate indiscriminate permit authorization, and it absolutely does not permit granting permits and approvals under CBW Registration protocols and Endangered Species Act rules, to other applicants that are under-qualified or not qualified at all, which as here, these Federal Defendants have engaged in such arbitrary approval granting.

23. These Federal Defendants contrary to a myriad of federal rules have tolerated, allowed, and in many regard; *fostered* a pay-for-play scheme where agency outsiders have been allowed unfettered access to the permitting process; all but guaranteeing approvals inside normal processing times to persons, entities and non-juridical beings wholly unqualified to possess these permits, approvals or authorities from the United States Fish and Wildlife Service.

## The Administrative Procedures Act

24. The APA provides for judicial review of final agency action by persons "aggrieved" by the action. *See* 5 U.S.C. § 702. The APA legally renders "inaction" (by the agency) as a denial after the sixth month of inactivity (on the application before the agency). Inaction or the failure to act upon the plaintiff's application violates the Endangered Species Act and the Administrative Procedures Act.

25. Plaintiff is 'aggrieved' and suffered injury by FWS DMA's random and wanton disregard of 50 C.F.R. § 17-3 and 16 U.S.C. § 1531. The *de facto* denial has recklessly interfered with its domestic and international breeding and propagation programs Plaintiff pursued and continues to pursue.

26. The APA imposes upon reviewing courts duties, including the requirements to: (a) compel agency action unlawfully withheld or unreasonably delayed and (b) hold unlawful and set aside agency action, findings, and conclusions to be found to be arbitrary, capricious, and an abuse of discretion or otherwise not in accordance with law…. *See* 5 U.S.C. § 706.

27. The judicial review provisions of APA and ESA waive the Federal government's sovereign immunity. *See* 5 U.S.C. § 702 and 16 U.S.C. § 1540(g).

28. The *de facto* denials occasioned by the defendant's undue inaction and/or delay associated with defendants' permit application processing that contravenes the precise obligations undertaken by the United States government, as signatory to the Convention on Trade (CITES)[2] and the Administrative Procedure Act, 7 U.S.C. § 706(2)(a), (c), (d) in such instances wherein the APA specifically proscribes arbitrariness, capriciousness.

29. In this action, plaintiff is claiming that defendants undue inactivity and delay has resulted in isolated agency action and/or constitutes an ongoing agency policy whereby defendant has and continue to act and/or conduct itself in an arbitrary, unreasonable and capricious manner so as to cause plaintiff harm respecting plaintiff's efforts concerning its past, present and future domestic and international breeding and propagation programs in connection with CBW permits and application.

30. No provision of the ESA authorizes the Federal Defendants to engage in activities that discourage or hinder conservation or result in harm to the conservation of species. By simply ignoring, unduly delaying or failing to process plaintiff's past, present and future applications, the Federal Defendants are negatively impacting the covered species listed on each

---

[2] https://www.cites.org/

of the applications submitted to defendants for processing. By using this unlawful *de facto* denial *technique*, in connection with past, present and future application, the Federal Defendants prohibit the licensed plaintiff from furthering the conservation of each of the species itemized in the subject past, present and future applications.

31. The isolated agency action as defendant's conduct is described in this declaratory judgment along with such conduct being described and defined as an ongoing agency policy constitutes abuses of discretion, abuses of authority, and otherwise not in accordance with the operative law that has been legislated in the Endangered Species Act or the statutory framework articulated in the relevant section under Title 50.

## **FACTS**

32. One prior action that involved plaintiff and/or an affiliate of plaintiff was filed in the United States District Court for the District of Columbia on September 25, 2015.

33. Prior to this action having been filed in the District Court, Ryder Scientific, RLLLP, had submitted an permit applications numbered MA84796B-0, MA68808B-0 and MA6880088-1 to the Federal Defendants on or about March 4, 2014, in or about April, 2015 and in or about May, 2015, respectively, for review, consideration processing.

34. The applications for each of the three aforementioned permit applications were complete and fully in compliance with the requirements set and determined by the Federal Defendants.

35. Once submitted, the application sat unattended and dormant for a period of time so as to prevent the timely submittal and inclusion of the permit applications with the Federal Register within approximately 30 days upon receipt of same by the Federal Defendants.

36. Because of the unscheduled, unduly lengthy delay and inaction by the Federal Defendants, Ryder commenced his first action against the Federal Defendants in connection with the three aforementioned permit application.

37. The action was styled *Ryder v. United States Fish & Wildlife Services, et al.,* bearing Civil Action No. 1:15-cv-01576. Appended hereto as Exhibit A is a true and accurate copy of the Civil Docket for the action.

38. So as to satisfy the Court's concern about the lack of specificity concerning plaintiff's reference to the prior pieces of litigation such as the action styled *Ryder v. United States Fish & Wildlife Services, et al.,* bearing Civil Action No. 1:15-cv-01576, appended hereto as Exhibit B is the Complaint and its attendant Exhibits which are directly incorporated herein by reference as though set forth herein verbatim.

39. Inasmuch as this action was filed on September 25, 2015, a review of the Civil Docket reveals that defendant, the same main defendant named herein, entered its appearance on November 5, 2015. *See* Exhibit A.

40. The Federal Defendants were all served with the aforementioned September 25, 2015 Complaint, in or about early October, 2015. *See* Exhibit A.

41. According to the Civil Docket that is appended hereto as Exhibit A, the Federal Defendants' Answers were due on December 8, 2015.

42. At no point during the 2015 action was an Answer filed because the parties, inclusive of the Federal Defendants, decided to stay the action as evidenced the Joint Motion to Stay Case Proceedings that was filed by the Federal Defendants. *See* 15-cv-01576 [ECF No. 7]. The Stipulation to Stay the matter was filed on December 23, 2015 and a result Stipulation of Dismissal was filed with the Court on March 3, 2016 without any responsive

pleadings having been filed by the Federal Defendants and no filings on the docket by Mr. Ryder, an affiliate of plaintiff named herein. *See* Exhibit A.

43. When this incident occurred, meaning the filing of the 2015 Complaint which is appended hereto as Exhibit B, the conduct complained about within the four corners of the Complaint constituted the first episode and instance whereby the Federal Defendants engaged in an isolated agency action (which had been repeated threes time in quick and absolute succession) as defendant's conduct is described in this declaratory judgment along with such conduct being described and defined as an ongoing agency policy constitutes abuses of discretion, abuses of authority, and otherwise not in accordance with the operative law that has been legislated in the Endangered Species Act or the statutory framework articulated in the relevant section under Title 50.

44. When these event initially occurred and Mr. Ryder was subjected to the harm that they caused, he did not know at the time that such event would be readily repeated with each successive permit application that was filed by him and/or plaintiff and/or any other individual directly affiliated with the named plaintiff.

45. The very next encounter the Mr. Ryder had with the Federal Defendants resulted in yet the filing of a second legal action that was styled *Phoenix Herpetological Society, Inc. v. United States Fish and Wildlife Service, et al,* bearing Civil Action No. 1:17-cv-02584 (APM).

46. The second action clearly indicates that parties named therein are absolutely aligned with the parties to this instant action was filed with the United States District Court for the District of Columbia on December 4, 2017. *See* Exhibit C Civil Docket for 2017 action.

47.	Again, so as to satisfy the Court's concern about the lack of specificity concerning plaintiff's reference to the prior pieces of litigation such as the action styled *Phoenix Herpetological Society, Inc. v. United States Fish and Wildlife Service, et al,* bearing Civil Action No. 1:17-cv-02584 (APM), the Complaint is appended hereto as Exhibit D and is directly incorporated herein by reference as though set forth herein verbatim.

48.	This litigation concerned the following permit applications that were submitted to the Federal Defendants for review, consideration and processing: (1) to export four iguanas (application filed on February 22, 2016) and to renew its CBW registration for iguanas and other species at plaintiff's facility (application filed on May 23, 2016) along with the inclusion of two species of crocodiles (Mugger/Gharial) that were for reasons unknown by plaintiff were removed by the Federal Defendant from plaintiff's permit, and, as such, plaintiff needed to have those species added back on to plaintiff's CBW registration (application filed in or about January, 2017).

49.	Again, each of the applications as required by statute and/or regulation were to be included in the Federal Register for a comment period within approximately 30 days upon receipt by the Federal Defendants. However, that period was unduly delayed and expired.

50.	Because of the all of the unscheduled, unduly lengthy delay and inaction by the Federal Defendants, this second piece of litigation that was commenced against the Federal Defendants resulted in a component of the action, that portion which related to the *Crocodylus palustris* and *Gavilalis*, being settled by way of a Stipulation of Dismissal. *See* 17-cv-02584 at [ECF No. 27].

51. The Stipulation resolved that portion of the action concerning the permit application(s) respecting the *Crocodylus palustris* and *Gavilalis* was filed with the Court on March 29, 2019. *Id.*

52. Even though a period in excess of one year had passed since the filing of the action and the entry of the Stipulation, plaintiffs were not required to submit any documentation or other information to the Federal Defendants which was relied upon by the Federal Defendants as the basis upon which an agreement achieved that allowed for the entry of the Stipulation of Dismissal was entered into in connection with the three aforementioned permit application.

53. And, the Stipulation of Dismissal that concerned the *Crocodylus palustris* and *Gavilalis* was entered into by the parties well before the action was litigated and the District Court fully adjudicated the merits of the action. The action was not fully adjudicated until the entry of a Memorandum Opinion and Order on June 5, 2020. *Id.* at [ECF Nos. 47 and 48] (a Notice of Appeal respecting 17-cv-02584 has been filed and is currently pending).

54. The second action bearing docket number 17-cv-02584, certainly as it relates to that component of plaintiff's permit application that concerned the *Crocodylus palustris* and *Gavilalis* demonstrates the "capable of repetition, yet evading review" standard that is required in order to hold liable the Federal Defendants for engaging in an isolated agency action as defendant's conduct is described in this declaratory judgment along with such conduct being described and defined as an ongoing agency policy constitutes abuses of discretion, abuses of authority, and otherwise not in accordance with the operative law that has been legislated in the Endangered Species Act or the statutory framework articulated in the relevant section under Title 50.

55. This instant action is again representative and constitutes an act of cyclical mooting by the Federal Defendants.

56. This instant action is similarly demonstrative and unequivocally evidences the capability of the Federal Defendants engaging in repetitive isolated agency action, yet evading review.

57. This instant action is similarly demonstrative and unequivocally evidences the capability of the Federal Defendants engaging in repetitive conduct that qualifies as an ongoing agency policy that involves abuses of discretion, abuses of authority, and otherwise not in accordance with the operative law that has been legislated in the Endangered Species Act or the statutory framework articulated in the relevant section under Title 50, all the while designed to yet evade review.

58. The Civil Docket for this action is appended hereto as Exhibit E.

59. In this action that was filed by plaintiff on March 21, 2019, plaintiff filed this action against because of the Federal Defendants' inaction and unduly delaying the processing of plaintiff's permit application related to a Komodo Dragon CBW application.

60. The applications were submitted on or about February 20, 2018.

61. The applications for each of the three aforementioned permit applications were complete and fully in compliance with the requirements set and determined by the Federal Defendants.

62. The application as required by statute and/or regulation was to be included in the Federal Register for a comment period within approximately 30 days upon receipt by the Federal Defendant. However, the Federal Defendants failed to comply with that requirement.

63. Because of the all of the unscheduled, unduly lengthy delay and inaction by the Federal Defendants, this third piece of litigation that was commenced against the Federal Defendants resulted in the Federal Defendants issuing to plaintiff the sought after permit on or about July 23, 2019.

64. The Federal Defendant issued the subject permit [ECF No. 20-1] within a period of approximately 120 following plaintiff's commencement of this action. Upon the issuance of the permit, the Federal Defendants immediately inquired of plaintiff to dismiss this action as moot without any benefit of litigation or adjudication taking place.

65. By way of time points, the Federal Defendants' Answer was due to be filed on May 21, 2019 and the permit was issued essentially 60 days later. *See* Exhibit E and [ECF No. 20-1].

66. While this instant action was pending as it related to plaintiff's claim of "cyclical mooting", Messrs. Ryder and Johnson, filed permit applications with defendants on or about August 22, 2019. *See* Exhibit F and G, respectively.

67. Again, for the purposes of showing that the complained of conduct is and was "capable of repetition", these two permits remained dormant and essentially unattended to with the benefit of any final decision or placing same in the Federal Register for comment even through the filing of this Third Amended Complaint.

68. Because of the Federal Defendants' failure to act regarding these last two permit applications in the same manner as previously described in connection with each of the three previous pieces of litigation, civil actions were filed with the United States District Court for the District of Columbia, on June 2, 2020. *See Russell Johnson v. United States Department*

*of the Interior, et al.,* Civil Action No. 1:20-cv-01459 and *Christian Ryder v. United States Department of the Interior, et al,* Civil Action No. 1:20-cv-01460.

69. Plaintiff specifically incorporates herein by reference the allegations set forth in the actions styled *Russell Johnson v. United States Department of the Interior, et al.,* Civil Action No. 1:20-cv-01459 and *Christian Ryder v. United States Department of the Interior, et al,* Civil Action No. 1:20-cv-01460 as though they were set forth verbatim herein.

70. Given the need and necessity to file the actions bearing civil action numbers 20-cv-1459 and 20-cv-1460, there is no doubt concerning the certainty of the Federal Defendants willingness, repetitiveness, likelihood and certainty of engaging in conduct that unquestionably qualifies as conduct falling with the exception to the mootness doctrine as defined in *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975) and *City of Houston v. Dep't of Hous. and Urban Develp.,* 24 F.3d 1421, 1429 (D.C. Cir. 1994), *i.e,* "capable of repetition, yet evading review."

71. These last two civil actions that were most recently filed with the District Court are yet again representative and constitutes an act of cyclical mooting by the Federal Defendants, and, as such, demonstrates that plaintiff's claim regarding "cyclical mooting" is certainly more than speculative but instead absolutely affects plaintiff in the future which confers subject matter jurisdiction upon this Court as recognized by the Court in *Cir. For Science in the Pub. Interest v. Regan,* 727 F.2d 1161, 1166 n. 6 (D.C. Cir. 1984). And, plaintiff, as a licensed zoo will be filing additional future permit applications with the Federal Defendants in the normal course of its business operations all of which are subject to the same "cyclical mooting" that is the subject of this instant litigation and those previously identified pieces of litigation which are incorporated herein.

72. Again, the same parties are directly involved in each of the five identified pieces of litigation, and, as such, as evidenced by this present and the two most recent pieces of litigation, plaintiff is being subject to present and continuing adverse effects as articulated in *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974).

73. In addition to the foregoing wrongful conduct by the Federal Defendants, they would delay acting on plaintiffs' permitting applications (CBW MA19818A07 & Import Permit 17US02044C/9) involving Tomistoma Importation (application submitted on July 18, 2016). The application lay dormant until plaintiff threatened the Federal Defendants with a lawsuit On October 9, 2016, resulting in the issuance of the permit on December 18, 2016.

74. Similarly, on or about October 28, 2015, plaintiff submitted an import application (Import Permit 16US80786B/9) respecting Black Caiman to the Federal Defendants. As with the application for the Tomistoma Importation, the Federal Defendants failed to submit and include this application within the Federal Register within thirty days from the date of receipt of the application. Again, plaintiff had to threatened to file suit against the Federal Defendants because of their dilatory conduct on or about June 25, 2016. Shortly thereafter, the Federal Defendants issued plaintiff its Import Permit on September 19, 2016.

## CAUSES OF ACTION

### COUNT ONE

**(Violations of the APA and ESA)**

75. Plaintiff realleges and incorporates herein by reference all the allegations of this Complaint, as though fully set forth below.

76. The Federal Defendants engaged in cyclical mooting in direct violation 5 U.S.C.S. § 706(2)(A), (C).

## COUNT TWO

### (Violations of CITES Treaty by the Federal Defendants For Imputation of an Unlawful Allonge on CITES Import Permit No. 16US80786B/9)

77. Plaintiff realleges and incorporates herein by reference all the allegations of this Complaint, as though fully set forth below.

78. By circumscribing proper management authority by the U.S. Fish and Wildlife Service's Branch of Permits, the Service has arbitrarily and capriciously, as well as unlawfully held plaintiff to a standard that is inapposite to CITES protocol; and is different to standards the Service has held other Import applicants to. Thusly, it is capricious. It is equally unlawful. The DMA unit of US FWS has no such legal authority extended to it by any Act of Congress or under any CITES requirement.

79. The U.S. Fish and Wildlife Service has no power or authority to indenture any applicant to a monetary servitude to wholly disconnected third-party recipients.

## **PRAYER FOR RELIEF**

For the reasons stated above, Plaintiff respectfully requests that the Court grant the following relief:

1. Issue a declaratory judgment declaring that the Federal Defendants have violated the APA and ESA in connection with the capability of the Federal Defendants to engage in repetitive conduct that qualifies as an ongoing agency policy that involves abuses of discretion, abuses of authority, and otherwise not in accordance with the operative law that has been legislated in the Endangered Species Act or the statutory framework articulated in the

relevant section under Title 50, all the while designed to yet evade review and constitute "cyclical mooting."

        2.    Declare that the allonge placed upon the import permit enumerated in Para 38 A-K, is unlawful and cannot be enforced upon the plaintiff. Plaintiff asks this Court to declare the allonge ineffective and void and that the plaintiff has no further encumbrance of such allonge.

        3.    Award the Plaintiff all costs associated with this litigation including but not limited to court costs and fees, printing, mailing, serving, and all costs determinatively related to the senseless round of unneeded agency appeals, including travel costs and accumulated legal costs.

Dated: June 11, 2020                      Respectfully submitted,

                                        LAW OFFICES OF FREDERICK COLES, III

                                        /s/    Frederick Coles, III
                    By:    _____
                                        Frederick Coles, III, Bar No. 434896
                                        4802 South 1110 East
                                        Salt Lake City, Utah 84117
                                        Tel. No. 908.757.4977
                                        E-Mail:  FColes@coleslegal.com
                                        Attorneys for Plaintiff, Phoenix Herpetological Society, Inc.