# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯  ) | |
| PHOENIX HERPETOLOGICAL  ) | |
| SOCIETY, INC.,  ) | |
|  ) | |
|      Plaintiff,  ) | |
|  ) | |
|      v.  ) | Case No. 19-cv-00788 (APM) |
|  ) | |
| UNITED STATES FISH AND WILDLIFE  ) | |
| SERVICE, et al.,  ) | |
|  ) | |
|      Defendants.  ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯  ) | |
|  ) | |
| RUSSELL J. JOHNSON  ) | |
|  ) | |
|      Plaintiff,  ) | |
|  ) | |
|      v.  ) | Case No. 20-cv-01459 (APM) |
|  ) | |
| UNITED STATES DEPARTMENT  ) | |
| OF THE INTERIOR, et al.,  ) | |
|  ) | |
|      Defendants.  ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯  ) | |
|  ) | |
| CHRISTIAN RYDER  ) | |
|  ) | |
|      Plaintiff,  ) | |
|  ) | |
|      v.  ) | Case No. 20-cv-01460 (APM) |
|  ) | |
| UNITED STATES DEPARTMENT  ) | |
| OF THE INTERIOR, et al.,  ) | |
|  ) | |
|      Defendants.  ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯  ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

## I.   INTRODUCTION

In these three consolidated cases, Plaintiffs Phoenix Herpetological Society, Russell Johnson, and Christian Ryder challenge Defendants' failure to timely act on their applications for new and amended Captive Bred Wildlife permits.   Before the court are Defendants' various motions to dismiss.   For the reasons that follow, the motions are largely denied but granted in one respect.

## II.   BACKGROUND

### A.   Statutory Background

Section 9 of the Endangered Species Act of 1973 ("ESA") prohibits the taking of endangered species.   16 U.S.C. § 1538(a)(1)(B), (C).   "Taking" is defined as harassing, harming, pursuing, hunting, shooting, wounding, killing, trapping, capturing, or collecting any such species. *Id.* § 1532(19).   Section 9 also forbids an array of other acts with respect to endangered species, including importing, exporting, possessing, selling, delivering, carrying, transporting, or shipping such species.   *Id.* § 1538(a)(1).   Notwithstanding these restrictions, under Section 10 of the ESA, the Secretary[1] may issue permits that allow acts otherwise prohibited by section 9 "for scientific purposes or to enhance the propagation or survival of the affected species."   *Id.* § 1539(a)(1)(A).

In 1979, pursuant to its section 10 authority, the United States Fish and Wildlife Service (the "Service") established the Captive Bred Wildlife ("CBW") permitting program.   50 C.F.R. § 17.21(g).   That program allows qualified individuals to "take; export or re-import; deliver, receive, carry, transport or ship in interstate or foreign commerce, in the course of a commercial

---

[1] Depending on the species, either the Secretary of Commerce or the Secretary of the Interior has such authority. 16 U.S.C. § 1533(a); 50 C.F.R. § 402.01(b).

activity; or sell or offer for sale in interstate or foreign commerce any endangered wildlife that is bred in captivity in the United States" if "[t]he purpose of such activity is to enhance the propagation or survival of the affected species." *Id.* § 17.21(g)(1); *see* 44 Fed. Reg. 54,002, 54,007 (Sept. 17, 1979); *see also Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros.*, 502 F. Supp. 2d 103, 111 (D.D.C. 2007).   The Director of the Service must also find that a CBW registration "will not operate to the disadvantage of the species."   50 C.F.R. § 17.21(g)(3)(ii).

**B.**     ***Phoenix Herpetological Society v. U.S. Fish and Wildlife Service*, No. 19-cv-788**[2]

On February 10, 2018, Plaintiff Phoenix Herpetological Society ("Phoenix") filed an application with the Service, asking to amend its CBW registration to add a section 10 exemption for *Varanus komodoensis*, commonly known as the Komodo dragon.   Mem. Op. & Order, *Phoenix Herpetological Soc'y v. U.S. Fish & Wildlife Serv.*, No. 19-cv-788 (APM) (D.D.C.), ECF No. 25 [hereinafter *Phoenix II* Mem. Op.], at 3.   After waiting more than a year for its application to be processed, Phoenix filed an action seeking declaratory and injunctive relief against Defendants on March 21, 2019, arguing that the Service's failure to act violated the ESA and the Administrative Procedure Act ("APA").   *Id.* at 3–4.   In June 2019, the Service finally took up Phoenix's application, and on July 24, 2019, it mailed Phoenix an approved amended registration.   *Id.* at 4–5.   Defendants thereafter moved to dismiss Phoenix's suit as moot.   *Id.* at 5.

Phoenix opposed dismissal.   Though conceding its request for injunctive relief was moot, Phoenix asserted that its request for declaratory relief fit the exception for cases that are "capable of repetition, yet evading review."   *Id.* at 8.   Phoenix maintained that the exception applied

---

[2] The court assumes the parties' knowledge of the underlying facts in this matter which are set forth in greater detail in its earlier opinion.   *See* Mem. Op. & Order, *Phoenix Herpetological Soc'y v. U.S. Fish & Wildlife Serv.*, No. 19-cv-788 (APM) (D.D.C.), ECF No. 25.

because the Service's failure to timely act on its application was not an isolated, one-time occurrence. *Id.* Instead, it was just one example of "cyclical mooting"—Phoenix's term for the Service's alleged practice of acting on permit applications only after a lawsuit was threatened or filed. *Id.* at 9. Phoenix asserted that it was subject to at least eight instances of "cyclical mooting," but the court found the allegations and evidence presented inadequate to support that claim. *Id.* at 9–10. As a result, on April 28, 2020, the court granted Defendants' motion to dismiss but afforded Phoenix leave to amend its Complaint. *Id.* at 12.

On June 11, 2020, Phoenix filed a Third Amended Complaint. Third Am. Compl., *Phoenix Herpetological Soc'y v. U.S. Fish & Wildlife Serv.*, No. 19-cv-788 (APM) (D.D.C.), ECF No. 27 [hereinafter Third Am. Compl.]. That Complaint curiously shifts its focus from earlier iterations. Unlike the first two versions that challenged the agency's failure to timely act on Phoenix's permit application, the Third Amended Complaint centers on a challenge to the Service's alleged "ongoing policy" of "cyclical mooting." *See* Third Am. Compl. at 1–2; *id.* at 16 (seeking as relief "a declaratory judgment declaring that the Federal Defendants have violated the APA and ESA in connection with the capability of the Federal Defendants to engage in repetitive conduct that qualifies as an ongoing agency policy"). Separately—and frankly, inscrutably—the Third Amended Complaint also asks the court to "[d]eclare that the allonge placed upon the import permit enumerated in Para 38 A-K, is unlawful and cannot be enforced." *Id.* at 17.

Defendants now once again move to dismiss the case as moot given the Service's earlier approval of Phoenix's amended registration application. *See* Defs.' Mot. to Dismiss, ECF No. 29 [hereinafter *Phoenix II* Renewed Mot.], at 6–10. In the alternative, they argue that Phoenix's

policy challenge cannot be sustained under the APA.  *Id.* at 10–11.  Finally, Defendants assert

that Phoenix's "allonge" request must be denied for lack of clarity.  *Id.* at 12.

C.   *Johnson v. U.S. Department of the Interior*, No. 20-cv-1459, and *Ryder v. U.S. Department of the Interior*, No. 20-cv-1460

On June 2, 2020, during the pendency of Phoenix's suit, Russell Johnson and Christian

Ryder—two individuals affiliated with Phoenix—filed identical complaints against Defendants,

alleging that the Service violated the ESA and the APA when it failed to act on their new CBW

permit applications regarding the Grand Cayman blue iguana (*Cyclura lewisi*).  *See* Compl. for

Declaratory J., *Johnson v. U.S. Dep't of the Interior*, No. 20-cv-1459 (APM) (D.D.C.), ECF No. 1

[hereinafter *Johnson* Compl.]; Compl. for Declaratory J., *Ryder v. U.S. Dep't of the Interior*,

No. 20-cv-1460 (APM) (D.D.C.), ECF No. 1.[3]   Johnson and Ryder (collectively, the "Individual

Plaintiffs") had filed their respective applications with the Service on August 22, 2019.

*See Johnson* Compl. ¶ 1.

On June 26, 2020, the Service informed the Individual Plaintiffs that their applications

were denied.  *See* Errata, *Johnson v. U.S. Dep't of the Interior*, No. 20-cv-1459 (APM) (D.D.C.),

ECF No. 9, Ex. 1, ECF No. 9-1.  Defendants then moved to dismiss their suits as moot.

*See* Federal Defs.' Mot. to Dismiss, *Johnson v. U.S. Dep't of the Interior*, No. 20-cv-1459 (APM)

(D.D.C.), ECF No. 7 [hereinafter *Johnson* Mot.], at 1.   The Individual Plaintiffs opposed dismissal

insofar as they sought declaratory relief, arguing that the delayed actions on their applications are

further examples of the Service's "cyclical mooting" practice, which renders their claims "capable

of repetition, yet evading review."   Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot., *Johnson v.*

---

[3] Because the papers in *Johnson* mirror those in *Ryder* in every relevant respect, the court cites only to the *Johnson* docket to avoid unnecessary redundancy.

*U.S. Dep't of the Interior*, No. 20-cv-1459 (D.D.C.), ECF No. 11 [hereinafter *Johnson* Opp'n], at 1–2.

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Where a motion to dismiss under Rule 12(b)(1) makes a facial attack on the complaint, the reviewing court 'must accept as true all material allegations on the complaint, and must construe the complaint in favor of the complaining party.'" *Martha's Vineyard/Dukes Cty. Fisherman's Ass'n v. Locke*, 811 F. Supp. 2d 308, 313 (D.D.C. 2011) (quoting *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009)); *see also Jerdine v. FDIC*, 730 F. Supp. 2d 218, 222–23 (D.D.C. 2010) ("In ruling on a motion under Rule 12(b)(1), the Court 'must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975))).   The burden is on the plaintiff to demonstrate that the court has subject matter jurisdiction.   *Jerdine*, 730 F. Supp. 2d at 222 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) ("Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction.").   A court "may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under [Rule 12(b)(1)] on the complaint standing alone," however, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." FED. R. CIV. P. 12(h)(3) (emphasis added); *D.C. Transit Sys., Inc. v. United States*, 717 F.2d 1438, 1440 n.1 (D.C. Cir. 1983); *Pond Constructors, Inc. v. U.S. Gov't Accountability Office*, No. 17-cv-0881 (DLF), 2018 WL 3528309, at *1 (D.D.C. May 30, 2018) ("Rule 12(h)(3) requires a court to dismiss an action if it 'determines at any time that it lacks subject-matter jurisdiction.'" (quoting FED. R. CIV. P. 12(h)(3))).

### B.      Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept the plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).   But the court need not accept as true either "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

IV.     DISCUSSION

In each of these consolidated cases, Defendants argue primarily that the Plaintiffs' claims are moot.   *See Phoenix II* Renewed Mot. at 6–10; *Johnson* Mot. at 6–10; Federal Defs.' Mot. to Dismiss, *Ryder v. U.S. Dep't of the Interior*, No. 20-cv-1460 (D.D.C.), ECF No. 6 [hereinafter *Ryder I* Mot.], at 6–10.   The court disagrees.   Below, the court provides a brief overview of the applicable mootness doctrine before addressing the issues specific to each case.

A.     Mootness

"The mootness doctrine, deriving from Article III, limits federal courts to deciding 'actual, ongoing controversies.'"   *Clarke v. United States*, 915 F.2d 699, 700–01 (D.C. Cir. 1990) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)).   "Even where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"   *Id.* at 701 (quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)); *see also NRDC v. U.S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 813–14 (D.C. Cir. 1982) ("[N]o justiciable controversy is presented . . . when the question sought to be adjudicated has been mooted by subsequent developments." (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968))).   "A case becomes moot . . . when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."   *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

Two exceptions to mootness are pertinent to the motions before the court.   First—and relevant to Phoenix's case—"a plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy."   *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316,

321 (D.C. Cir. 2009) (citing *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 (D.C Cir. 1994)).   In *Super Tire Engineering v. McCorkle*, for example, the Supreme Court held that although a claim for injunctive relief preventing payment of welfare benefits during a strike was moot because the strike had ended, the employers' request for declaratory relief was not moot because the state's ongoing policy of paying strike benefits was, according to the employers, "immediately and directly injurious to the [employers'] economic positions."   416 U.S. 115, 125 (1974).   Nevertheless, "plaintiffs who challenge an ongoing policy must still demonstrate both that the request for declaratory relief is ripe and that they have standing to bring such a forward-looking challenge."   *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1206 (D.C. Cir. 2013) (cleaned up).

The second exception, relevant to the Individual Plaintiffs' cases, applies when a plaintiff is "attack[ing] an isolated agency action," as opposed to an ongoing policy.   *Del Monte*, 570 F.3d at 321.   In those cases, the action is not moot when the issue in question is "capable of repetition, yet evading review."   *Weinstein v. Bradford*, 423 U.S. 147, 149 (2015).   For the exception to apply, "(1) the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [must be] a reasonable expectation that the same complaining party would be subjected to the same action again."   *Id.*   "[J]urisdiction cannot be predicated upon a speculative or irrational fear as to future agency conduct."   *Ctr. for Sci. in the Pub. Interest v. Regan*, 727 F.2d 1161, 1166 n.6 (D.C. Cir. 1984).

    **B.**    ***Phoenix Herpetological Society v. U.S. Fish and Wildlife Service*, No. 19-cv-788**

        *1.*    *Defendants' Mootness Argument*

As noted above, Phoenix's Third Amended Complaint shifts the organization's rationale for why its declaratory judgment claims are not moot.   *See* Third Am. Compl. ¶ 2; *id.* at 16.

Previously, Phoenix's challenge centered on "an isolated agency action"—namely, the Service's failure to timely act on its request to amend its CBW permit. *See Phoenix II* Mem. Op. at 8. Phoenix argued that because the Service's failure was not an isolated, one-time occurrence, the "capable of repetition, yet evading review" exception applied. *Id.* This time around, however, Phoenix has reframed its Complaint to emphasize what it considers to be the Service's "ongoing policy" of mooting cases in response to threatened or filed legal action (i.e., "cyclical mooting"). *See* Third Am. Compl. ¶ 2; *id.* at 16; *see also* Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot., ECF No. 30, at 6.

Defendants acknowledge this shift in Phoenix's legal theory, yet they continue to insist that Phoenix has failed to demonstrate that the alleged policy is "capable of repetition, yet evading review." *See Phoenix II* Renewed Mot. at 6–10. But that is not the relevant test. The "capable of repetition, yet evading review" exception applies only in cases in which a plaintiff is challenging a discrete agency action that would otherwise be moot. *See Del Monte*, 570 F.3d at 321. By contrast, when a plaintiff challenges an "ongoing policy," such a claim is not moot so long as the plaintiff "demonstrate[s] both that the request for declaratory relief is ripe and that [he has] standing to bring such a forward-looking challenge." *Conservation Force*, 733 F.3d at 1206 (cleaned up); *see Del Monte*, 570 F.3d at 321. Because Phoenix's Third Amended Complaint challenges an "ongoing policy" of "cyclical mooting" rather than any discrete instance of such mooting, the latter exception governs the court's analysis. Thus, the court proceeds to address ripeness and standing.

To determine whether a case is ripe, courts evaluate two factors: (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Abbott Lab'ys. v. Gardner*, 387 U.S. 136, 149 (1967). Both factors are satisfied here. The central

concern behind the fitness factor is avoiding circumstances in which judges are "deciding issues unnecessarily, wasting time and effort." *See Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 425 (D.C. Cir. 2007) (quoting *W.R. Grace & Co. v. EPA*, 959 F.2d 360, 366 (1st Cir. 1992)). Phoenix offers sufficient reason to believe that it will be subject to the Service's "cyclical mooting" practice in the near future.   Specifically, it points to two other suits, filed during the pendency of the current action, that allegedly involve the same conduct.   *See* Third Am. Compl. ¶ 68 (citing *Johnson v. U.S. Dep't of the Interior*, No. 20-cv-1459 (APM) (D.D.C.); *Ryder v. U.S. Dep't of the Interior*, No. 20-cv-1460 (APM) (D.D.C.)).   At the motion to dismiss phase, these allegations are enough to satisfy the court that the Service's "cyclical mooting" policy is ongoing and that the likelihood that Phoenix will continue to feel the policy's adverse effects is not so speculative as to render its declaratory judgment request unripe.   *Cf. Conservation Force*, 733 F.3d at 1206 (finding that challenge to alleged agency policy of delaying permit decisions was unfit for review based on pending Service actions that would obviate the need for future permits).   The court also finds that Phoenix would suffer hardship if the court withheld its consideration.   Unlike the appellants in *Conservation Force*, Phoenix has alleged that it "will" submit other permit applications in the future.   *Compare* 733 F.3d at 1207 *with* Third Am. Compl. ¶ 71 (noting that, as a licensed zoo, Phoenix "will be filing additional future permit applications with [Defendants] in the normal course of its business operations").   Because both *Abbott Labs* factors are met, Phoenix's request for declaratory relief is ripe.

Similarly, the court concludes that Phoenix has established standing to challenge an ongoing agency action.   The "irreducible constitutional minimum" of standing requires an injury in fact, causation, and redressability.   *Lujan*, 504 U.S. at 560–61.   At the motion to dismiss phase, "the standing inquiry turns on the allegations in the complaint" as well as affidavit evidence the

plaintiff may present.   *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987).   The well-pleaded

fact allegations plus evidence must give rise to a claim of standing that is plausible on its face to

defeat a motion to dismiss.   *See Kareem v. Haspel*, No. 19-5328, 2021 WL 137361, at *4 (D.C.

Cir. Jan. 15, 2021).   Phoenix meets that standard.   It alleges that it "*will* be filing additional future

permit applications."   Third Am. Compl. ¶ 71 (emphasis added).   It also points to multiple

cases—both past and present—in support of its allegation that the Service's "cyclical mooting"

policy exists and is ongoing.   *See id.* ¶¶ 2, 37 (citing *Ryder v. U.S. Fish & Wildlife Serv.*, No. 15-

cv-1576 (CRC) (D.D.C.)), 45 (citing *Phoenix Herpetological Soc'y v. U.S. Fish & Wildlife Serv.*,

No. 17-cv-2584 (APM) (D.D.C.), 66–70 (citing the instant *Ryder* and *Johnson* actions), 73–74

(alleging that twice in 2016 the Service acted on permits only after threatened litigation).   Taken

together, these allegations plausibly establish that the Service's policy of "cyclical mooting" will

result in undue delay in processing permit applications that Phoenix will "likely" file "in the

foreseeable future"; Phoenix thus has demonstrated injury in fact.   *See Nat'l Air Traffic*

*Controllers Ass'n v. Fed. Serv. Impasses Panel*, 606 F.3d 780, 786 n.* (D.C. Cir. 2010) (finding

standing to challenge policy despite mooted individual controversy); *cf. Conservation Force*, 733

F.3d at 1207 (focusing on the likelihood of filing future permit applications).   Moreover,

Phoenix's allegations establish that any injuries it will face are fairly traceable to the Service's

"cyclical mooting" policy and are likely to be redressed by a decision granting its request for

declaratory relief.   *See* Third Am. Compl. ¶ 71; *id.* at 16–17.   As a result, both causation and

redressability are also satisfied.   *See Elec. Privacy Info. Ctr. (EPIC) v. Presidential Advisory*

*Comm'n on Election Integrity*, 878 F.3d 371, 376–77 (D.C. Cir. 2017).

In sum, because Phoenix has demonstrated, to extent necessary at this stage, both the ripeness of its declaratory relief request as well as its standing to bring that request, Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

2.   *Phoenix's Claim Under the APA*

Next, Defendants argue that even if Phoenix's declaratory judgment request is not moot, the APA "does not provide a cause of action for [Phoenix] to assert a generalized claim challenging an alleged pattern or practice on the part of the Service." *Phoenix II* Renewed Mot. at 10–11. But none of the cases Defendants cite stands for the proposition that a plaintiff cannot challenge the legality of a specific ongoing policy when that policy has concretely injured the plaintiff in the past and promises to do so again in the future. Review of Defendants' "cyclical mooting" policy is not tantamount to "a general judicial review of the [agency's] day-to-day operations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990), or a "programmatic attack" on such operations, *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 102 (D.D.C. 2000). Nor would it result in "'entanglement' in [the] daily management of [an] agency's business," *Del Monte Fresh Produce N.A., Inc. v. United States*, 706 F. Supp. 2d 116, 119 (D.D.C. 2010), or "pervasive oversight by federal courts," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 67 (2004). If anything, review of the Service's alleged policy is much more akin to a permissible review of a "specific order or regulation, applying some particular measure across the board"—in this case, the alleged policy of mooting pending suits meant to challenge the Service's undue processing delays. *See Lujan*, 497 U.S. at 890 n.2; *cf. Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("One exception [to the final agency action requirement] occurs where plaintiffs claim that a governmental action was . . . unreasonably delayed."). Phoenix's declaratory relief request, therefore, is cognizable under the APA.

13

3.      *Phoenix's "Allonge" Request*

Finally, Defendants challenge the validity of Phoenix's request that the court "[d]eclare that the allonge placed upon the import permit enumerated in Para 38 A-K, is unlawful and cannot be enforced," Third Am. Compl. at 17.   *Phoenix II* Renewed Mot. at 12.   Defendants are utterly confused by this request.   *Id*.   So, too, is the court.   There is no "permit enumerated in" paragraph 38 of the Third Amended Complaint, and that paragraph does not contain subparagraphs "A-K."   *See* Third Am. Compl. ¶ 38.   Perhaps Phoenix's request is tied to Count Two of the Third Amended Complaint, which is titled "Violations of CITES Treaty by the Federal Defendants For Imputation of an Unlawful Allonge on CITES Import Permit No. 16US80786B/9."   *Id.* at 16. That Count vaguely charges the Service with treating Phoenix's permit application differently than other similar applications, *id.* ¶ 78, and then asserts that the "Service has no power or authority to indenture any applicant to monetary servitude to wholly disconnected third-party recipients," *id.* ¶ 79.   But since Count Two is unsupported by any well-pleaded facts, *see* Third Am. Compl., it must be dismissed for failure to state a claim.   And in turn, Phoenix's "allonge" request must be denied.

\*   \*   \*

Defendants' motion to dismiss is granted as to Count Two of Phoenix's Third Amended Complaint but is otherwise denied.

**C.      *Johnson v. U.S. Department of the Interior*, No. 20-cv-1459 and *Ryder v. U.S. Department of the Interior*, No. 20-cv-1460**

Unlike Phoenix's challenge, the focus of the Individual Plaintiffs' suits is on discrete agency actions, specifically the Service's constructive denial (via inaction) of their CBW permit applications.   *See Johnson* Compl., ¶¶ 43, 46, 48.   So, in response to Defendants' subsequent decision to formally deny those applications, the Individual Plaintiffs contend that their declaratory

14

judgment claims are not moot because Defendants' "cyclical mooting" practice is "capable of repetition, yet evading review." *Johnson* Opp'n at 2.   The court agrees.

Recall that for the "capable of repetition, yet evading review" exception to apply, "there [must be] a reasonable expectation that the same complaining party would be subjected to the same action again" (i.e., capable of repetition) and "the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration" (i.e., evading review). *Weinstein*, 423 U.S. at 149.

As for the "capable of repetition" requirement, "[t]he same action generally refers to particular agency policies, regulations, guidelines, or recurrent identical agency actions." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 324 (D.C. Cir. 2014) (cleaned up). It is not necessary that the same "precise historical facts that spawned plaintiff's claims" recur; rather, "the legal wrong complained of by the plaintiff" must be "reasonably likely to occur." *Id.* (quoting *Del Monte*, 570 F.3d at 324).   This requirement should not "be applied with excessive stringency"—"a controversy need only be *capable* of repetition, not more probable than not." *Id.* (internal quotation marks omitted) (quoting *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988)). "[A] controversy is *capable* of repetition even if its recurrence is far from certain." *Id.* (citing *Doe v. Sullivan*, 938 F.2d 1370 (D.C. Cir. 1991)).

The Individual Plaintiffs point to three previous instances in which Defendants subjected them (or Phoenix) to the same "cyclical mooting" practice. *See Johnson* Opp'n at 7 (citing *Ryder v. U.S. Fish & Wildlife Serv.*, No. 15-cv-1576 (CRC) (D.D.C.); *Phoenix Herpetological Soc'y v. U.S. Fish & Wildlife Serv.*, No. 17-cv-2584 (APM) (D.D.C.); *Phoenix Herpetological Soc'y v. U.S. Fish & Wildlife Serv.*, No. 19-cv-788 (APM) (D.D.C.)); *see also Johnson* Compl. ¶¶ 20, 41 (referencing the latter two cases).   In each of those cases, the Service did not timely act

on the relevant permit application(s); the plaintiffs filed suit seeking a declaration that the Service's inaction violated the law; and before a final judgment could be issued or even considered, the Service acted on the application(s) and mooted, at least, the injunctive relief sought (i.e., an order compelling action on the application).   *See Phoenix II* Renewed Mot.; Joint Stipulation of Dismissal with Prejudice, *Ryder v. U.S. Fish & Wildlife Serv.*, No. 15-cv-1576 (CRC) (D.D.C.), ECF No. 8 [hereinafter *Ryder I* Stipulation]; Joint Stipulation of Dismissal, *Phoenix Herpetological Soc'y v. U.S. Fish & Wildlife Serv.*, No. 17-cv-2584 (APM) (D.D.C.), ECF No. 27 [hereinafter *Phoenix I* Stipulation].   Taken together, the cases establish that Defendants' alleged practice of "cyclical mooting" is indeed capable of repetition.   *See United Bhd. of Carpenters & Joiners of Am. v. Operative Plasterers' & Cement Masons' Int'l Ass'n of the U.S. & Can.*, 721 F.3d 678, 688 (D.C. Cir. 2013) (given that "the parties have already arbitrated three jurisdictional disputes arising under the [project labor agreement] . . . it is not unreasonable to expect another dispute to arise . . . before the [a]greement expires").

Defendants attempt to distinguish the Service's delay in issuing the denial letters to the Individual Plaintiffs in the present actions from the events in the prior three cases.   They contend that the Service delayed issuing the letters because it was waiting on the court's June 5, 2020 summary judgment order in *Phoenix Herpetological Society v. U.S. Fish and Wildlife Service*, No. 17-cv-2584 (APM) (D.D.C.).   Reply in Supp. of Federal Defs.' Mot., *Johnson v. U.S. Dep't of the Interior*, No. 20-cv-1459 (APM) (D.D.C.), ECF No. 12 [hereinafter *Johnson* Defs.' Reply], at 2. That order, Defendants assert, affirmed the validity of the Service's rationale underlying the denial letters, which were issued and mailed to the Individual Plaintiffs soon thereafter.   *See id.* at 1–2.

But that argument, at this stage in the proceedings, does not undercut the Individual Plaintiffs' showing.   On a motion to dismiss, the court "must accept as true" the Individual

Plaintiffs' allegations regarding the similarity between their cases and the earlier matters referenced in their Complaints. *Warth*, 422 U.S. at 501. The court also must draw all reasonable inferences in favor of the Individual Plaintiffs. *See id.* That the agency might have a reasonable explanation for the delays in these two cases does not overcome the plausible inference, based on unexplained past delays, that "cyclical mooting" will cause undue delay of future permit applications.[4] Accordingly, the Individual Plaintiffs have satisfied the "capable of repetition" requirement of the mootness exception.

The Individual Plaintiffs also meet the "evading review" requirement. The D.C. Circuit has held that, as a matter of law, "agency actions of less than two years' duration cannot be fully litigated prior to cessation or expiration, so long as the short duration is typical of the challenged action." *Del Monte*, 570 F.3d at 322 (cleaned up). That is undoubtedly the case here. In every action that the Individual Plaintiffs have brought to the court's attention, including their own cases, Defendants have acted to moot the claims within two years, often within months of the filing of the complaint. *See Ryder I* Stipulation (filed five months after complaint); *Phoenix I* Stipulation (filed one year and four months after complaint); *Phoenix II* Renewed Mot. at 1–2 (claims mooted approximately three months after amended complaint filed); *Johnson* Mot. at 4 (less than a month); *Ryder I* Mot. at 4 (same).

Defendants respond that their actions do not evade review because "[i]f [the Individual Plaintiffs] were to submit a new application . . . and the Service unreasonably delayed rendering a decision on that application[,] [they] would be able to challenge that action at that time." *Johnson* Defs.' Reply at 3. Not necessarily. The Individual Plaintiffs' entire point is that the Service

---

[4] Of course, if Defendants renew this argument at summary judgment, the court may see things differently on a more fulsome record.

keeps mooting their suits before any court can review the Service's failure to timely act on the relevant applications.   To assume, in the face of the Individual Plaintiffs' well-pleaded allegations, that the Service will cease such behavior moving forward is neither permissible nor reasonable at this stage in the litigation.   *See Warth*, 422 U.S. at 501.

Because the Individual Plaintiffs have demonstrated that Defendants' "cyclical mooting" actions are "capable of repetition, yet evading review," the court denies Defendants' motions to dismiss.

## V.      CONCLUSION AND ORDER

For the foregoing reasons, the court denies the motions to dismiss in *Johnson v. U.S. Department of the Interior*, No. 20-cv-1459 (ECF No. 7) and *Ryder v. U.S. Department of the Interior*, No. 20-cv-1460 (ECF No. 6).   The motion to dismiss in *Phoenix Herpetological Society v. U.S. Fish and Wildlife Service*, No. 19-cv-788 (ECF No. 29), is granted as to Count Two of the Third Amended Complaint but is otherwise denied.

The parties shall meet and confer and, by February 26, 2021, file a Joint Status Report that proposes a schedule for cross-motions for summary judgment.

Dated:   February 17, 2021

Amit P. Mehta
United States District Court Judge